### Wabash Railroad Co. v. Colby H. Propst.

1. MASTER AND SERVANT—*Where the Servant Elects to put Himself in a Dangerous Position.*—A servant who voluntarily elects to put himself in a dangerous position in the performance of his master's service, when a safe mode has been provided for him, assumes the risk incident to the method he employs.

2. SAME—*Injuries Received While Not in the Exercise of Ordinary Care.*—An employe who is injured while he is not in the exercise of ordinary care for his personal safety, can not recover.

Trespass on the Case, for personal injuries.  Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding.

Heard in this court at the May term, 1900.   Reversed, with a finding of facts.   Opinion filed December 7, 1900.

C. N. TRAVOUS, attorney for appellant.

MILLS BROS. and C. C. LEFORGEE, attorneys for appellee.

MR. PRESIDING JUSTICE HARKER delivered the opinion of the court.

Appellee recovered a judgment of $2,000 against appellant in a suit for personal injuries sustained by him while in the service of appellant repairing car tracks in its yards at Decatur.

The negligence charged in the declaration was the furnishing of an improperly constructed air-jack used by appellee and his co-employe to elevate cars, which broke and let a car down upon him.

At the time of the accident, appellee had been in the employ of appellant as a truck repairer, in its yards at Decatur, for about sixteen months. In the performance of this kind of work, air-jacks were used to lift the cars above the trucks to be repaired. There were three of these jacks, all of which had been in continuous use for ten years. They were used interchangeably and daily by employes working in that line of service. The evidence shows that the device was an improvement on any other previously used for the same purpose. It consisted of a cylinder within which operated a piston. The piston-head was cast-iron of two thicknesses with leather packing between, making it fit tight against the sides of the cylinder. The bottom and head of the cylinder were of brass, screwed into the barrel. The piston-rod was attached to the upper side of the head and extended up through the head of the jack. The compressed air from which it was operated was taken from pipes along the side of the track through a hose and introduced into the barrel beneath the piston-head through a three-eighths inch pipe. When introduced, the air would raise the piston and with it, the car to any desired height, not exceeding two feet. In using it the jack was placed under the

drawbar in the center of the car and a block was placed on top of the piston to rest against the car to prevent slipping. At the time these air-jacks were made, a large number of trestles were built and put into the yards to be placed under the cars when they were raised by the jacks, for the purpose of holding them in position. The men worked in pairs. It was the duty of one to operate the jack by means of the air-hose, while the other placed the trestles when the car was lifted to the desired height.

On the occasion of appellee's accident, the jack was operated by his "partner," one Starbotte. No trestles were placed under the car. As soon as it was lifted to the desired height, both men went under it for the purpose of pushing the trucks back and placing a thin board upon the center plate. While appellee was in the act of moving one of the trucks, the air-jack broke and the car was let down upon him, breaking one of his legs. The head of the jack was broken, the piston-rod was turned to one side, and the car moved some six or eight inches and rested on the side of the piston-rod. We are unable to determine, from the evidence, whether the accident resulted from the tilting of the car and jack, thereby throwing the weight of the car laterally on the piston, or from the defective manner in which the head of the jack was fastened into the cylinder.

It clearly appears from the evidence, however, that, had trestles been placed under the car, one under either side, as was customarily done, before appellee and his companion went under there, the accident could not have happened. They neglected to take that precaution, although there were trestles not ten feet away. Not only had appellant provided trestles to be used by the men to support the cars, after being raised by the jacks, but had also given instructions to the men to so use them. Appellee knew that the jack was not designed to perform the service of the trestles. He and his companion voluntarily undertook to do their work in a dangerous manner, when their employer had provided them with a safe means for doing it. A servant who voluntarily elects to put himself in a dangerous position in the performance of his master's services, when a safe mode

had been provided for him, assumes the risk incident to the method employed.   Abend v. T. H. & I. R. R. Co., 111 Ill. 202; Homersky v. Winkle Terra Cotta Co., 178 Ill. 562.

Upon the ground, then, that appellee was not in the exercise of ordinary care for his own safety, the judgment should be reversed.

Judgment reversed and the cause not remanded.

**Finding of Facts,** to be incorporated in the judgment of this court:

We find that the injury for which appellee has brought this suit to recover damages was caused by his own negligence and not by the negligence of appellant, and that appellee has no cause of action against appellant.